UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>GEORGE KINLISEH, )<br>)<br>    Defendant. ) | CRIMINAL NO. 18 CR 10351 - LTS |

UNITED STATES' SENTENCING MEMORANDUM

The United States recommends a sentence of one year of probation. Kinslieh pleaded guilty to filing a false tax return in 2016 by failing to report the income he gained from cashing lottery tickets.

FACTUAL BACKGROUND

During the relevant time period, Kinslieh resided in Lynn, MA and was a part owner of a liquor and convenience store in Lynn, Ma, Mike's Liquors, which was a Massachusetts State Lottery agent and sold lottery tickets.

Gambling income, including winnings from state lotteries, is fully taxable and must be reported to the IRS. Lotteries, sweepstakes, race tracks and other gambling operators are required to report to the IRS on a Form W-2G each transaction where the net winnings exceed $600 and are at least 300 times the amount of the wager. The Form W-2G reports to the IRS the winner's name, address and taxpayer identification as well as the amount of the gambling income and any taxes withheld. The winner must declare, under the penalties of perjury, that the name, address and taxpayer identification number listed on the Form W-2G are correct, and that "no other person is entitled to any part" of the payments listed on the form.

"Ten-percenting" is a practice by which lottery winners seek to evade these IRS reporting requirements and avoid payment of the applicable taxes by having another individual cash the winning ticket on their behalf, under the other individual's name. In exchange, the individual who cashes the winning ticket and completes the Form W-2G retains a percentage of the winnings, sometimes as high as 10 or 20 percent of the proceeds.

From in or about and between at least 2013 through 2015, Clarance Jones, Kinslieh and others engaged in a scheme to purchase winning lottery tickets from the actual winners for amounts $600 and higher at a discount, in order to enrich themselves while assisting the actual ticket holders to avoid income taxes on their winnings. Kinslieh purchased winning lottery tickets from the winning ticket holders for cash. Kinslieh typically paid the winners 80 to 90 percent of the value of the winning tickets.

Kinslieh provided the tickets themselves to Jones, who presented them—along with tickets he likewise obtained from other ticket agents—to an office of the Lottery Commission and signed a Massachusetts State Lottery Commission Claim Form, in which Jones falsely declared, under the pains and penalties of perjury, that the winnings were his own. Jones then collected the full value of the winning tickets from the Lottery Commission. Jones ultimately reported that lottery income on his tax returns, but offset it with other purported gambling losses.

Jones reimbursed Kinslieh for the amount Kinslieh had paid the actual ticket holders. Jones and Kinslieh then split the excess amount—usually between ten and twenty percent of the tickets' value. During the period in which he purchased winning lottery tickets, provided them to Jones, and shared a percentage of the proceeds with him, Kinslieh did not report that income on his federal income tax returns or pay taxes on it.

## BASIS FOR THE SENTENCING RECOMMENDATION

Kinliseh's gains from this conduct were relatively small. The loss in this case is calculated based upon the approximately $5,400 in unpaid taxes on the profits he made through ticket cashing.

In addition, Kinslieh admitted to the conduct from the first time he was questioned and has been cooperative throughout the investigation. He accepted responsibility pre-indictment and agreed to plead guilty and cooperate in this matter.

Kinliseh was one of a number of convenience store representatives who appear to have participated in this scheme – a scheme which was orchestrated by the defendant Clarance Jones – who was the number one lottery ticket casher for a number of years. On May 21, 2019, Jones pleaded guilty to the lottery and tax fraud scheme – likely in part due to the fact that Kinliseh and another convenience store representative had pleaded guilty, been interviewed, described the conduct and his role and Jones' role, and was available to be a witness in that case.

A sentence of one year of probation is also appropriate because it is the same as the sentence received by a similarly situated defendant – Bhvna Patel. Ms. Patel is another lottery agent representative who also cashed tickets for Clarance Jones. The government made the same recommendation as to Ms. Patel, and Judge Woodlock accepted that recommendation and sentenced her to one year of probation and a $12,500 fine. While a similar fine would otherwise be appropriate in this case, the United States submits that Kinslieh may be unable to pay such a fine and already owes back taxes that he needs to pay. By contrast, Clarance Jones, the leader of the conduct, caused a tax loss of more than $300,000 and thus appropriately has a higher guideline range, by the Government's calculation, of 19 (30-37 months).

The United States submits that in light of his limited profits, his prompt acceptance of responsibility and cooperation in the investigation, there is no need for a term of incarceration for Kinslieh and that a term of one year of probation is sufficient and appropriate.

                                        Respectfully submitted,

                                        ANDREW E. LELLING
                                        United States Attorney

By:    */s/ Sara Miron Bloom*
        SARA MIRON BLOOM
        Assistant United States Attorney
        (617)748-3265

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants .

                                        */s/ Sara Miron Bloom*_____
                                        SARA MIRON BLOOM
                                        Assistant United States Attorney

Date: June 19, 2019